UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

ACTION INK, INC.                          CIVIL ACTION


VERSUS                                    NO: 12-141


ANHEUSER-BUSCH, INC.                      SECTION: R

**ORDER AND REASONS**

Before the Court is defendant Anheuser-Busch's motion for summary judgment on its counterclaim and plaintiff's claims. For the following reasons, the Court GRANTS defendant's motion for summary judgment on all of plaintiff's claims and on defendant's counterclaim. The Court DENIES defendant's request for attorneys' fees.

**I.    BACKGROUND**

This trademark infringement and unfair competition case arises out of a dispute between plaintiff Action Ink, Inc., a sports marketing firm, and defendant Anheuser-Busch, Inc. In 1984, plaintiff filed an application to register the mark "THE ULTIMATE FAN" ("the Mark") and submitted with its application a flyer explaining the concept of holding competitions among sports fans.[1] After requiring several changes to plaintiff's application, on July 9, 1985, the United States Patent and Trade

---

[1]    R. Doc. 112-5 at 114-121.

Office (PTO) issued a registration for the Mark for the stated purpose of "promoting the goods and/or services of others by conducting a contest at sporting events."[2]

Plaintiff's president, Michael Eckstein, stated in an affidavit that plaintiff worked with several NBA teams between 1983 and 1987 to hold THE ULTIMATE FAN contests and promotions.[3] Plaintiff attempted to conduct more promotions with NBA teams, meeting with product sponsors and commissioning a model mock poster, but these efforts were unsuccessful.[4] During this period, the New Orleans Breakers of the United States Football League also held a THE ULTIMATE FAN competition, and plaintiff tried to work with the team on additional promotions.[5] The first contact between plaintiff and defendant occurred in 1988, when Eckstein wrote to defendant requesting that it stop using the phrase "THE ULTIMATE CUBS FAN BUD MAN SEARCH" on infringement grounds.[6] Counsel for the Chicago Cubs disputed the claim, arguing that the phrases were different and that the reference to "ultimate" was merely descriptive.[7]

---

[2]   *Id.* at 113.

[3]   R. Doc. 128-6 at 3.

[4]   *Id.* at 3-4.

[5]   *Id.* at 4; Pl. Ex. 12.

[6]   R. Doc. 128-6 at 5.

[7]   Pl. Ex. 15; Def. Ex. 49.

2

In June 1991, Eckstein submitted an affidavit to the PTO, in which he stated that the Mark had been in continuous use in interstate commerce for five consecutive years from the date of registration.[8] At the expiration of the trademark in 2005, plaintiff applied for renewal of the Mark, which was granted.[9]

In 1995, plaintiff learned that Major League Baseball (MLB) was considering holding an "Ultimate Fan" contest. After plaintiff sent a cease and desist letter, the MLB agreed to add language to its signs indicating that the phrase "Ultimate Fan" was being used with plaintiff's permission.[10] Over the past twenty years, plaintiff has contacted numerous other entities about possible infringement of the Mark, sending over 60 cease and desist letters between 2006 and 2012.[11] Some organizations agreed to stop using the phrase,[12] and two companies, GEICO Insurance and Louisiana Lottery, settled with plaintiff in response to cease and desist letters.[13] In addition, after plaintiff notified Tulane University of its alleged infringement in 2004 and 2009, Tulane contributed tickets to a charity as

---

[8]    R. Doc. 112-5 at 137.

[9]    *Id.* at 143-49.

[10]   Pl. Ex. 25.

[11]   R. Doc. 128-6 at 13; Def. Ex. 3, p. 181.

[12]   R. Doc. 128-6 at 13.

[13]   *Id.* at 18.

payment and discontinued its promotion.[14] On April 26, 2013, Tulane signed a licensing agreement with plaintiff, under which Tulane was allowed to use the Mark between January 1, 2013 and June 30, 2014 in exchange for the donation to charity of 300 tickets to Tulane athletic events.[15] No other entities have entered into licensing agreements with plaintiff for use of the Mark.[16]

In 2009, plaintiff contacted three NFL teams about promotional contests that it felt infringed its trademark.[17] Upon hearing that defendant was responsible for two of the promotions, plaintiff sent a cease and desist letter to defendant in September 2009 related to its promotion entitled "Bud Light©/ Washington Redskins Ultimate Fan Sweepstakes."[18] Defendant responded and requested more information, but no further action resulted.[19] In 2011, plaintiff became aware of defendant's use of the phrase "Ultimate Fan Experience" during a Bud Light promotion advertised in supermarkets and in commercials aired during NFL

---

[14]    *Id.* at 15.

[15]    Pl. Ex. 51.

[16]    R. Doc. 128-6.

[17]    *Id.* at 15.

[18]    Pl. Ex. 52.

[19]    *Id.*; R. Doc. 128-6 at 16.

games.[20] In November 2011, plaintiff sent a cease and desist letter to defendant, to which defendant responded that it would not cease its activities since it was not infringing plaintiff's mark.[21]

On January 19, 2012, plaintiff sued defendant for trademark infringement and false designation of origin under the Lanham Act and violation of state law. Defendant filed a counterclaim, seeking cancellation of plaintiff's federal registration of the Mark.[22] Defendant then filed a motion for summary judgment on its counterclaim and all of plaintiff's claims, which is now before the Court.[23]

Plaintiff also filed a separate suit on January 6, 2012, against the New York Jets and Arkadium, Inc. for trademark infringement based on the defendants' registration of the "Ultimate Fan" mark in connection with a computer game software program ("the *Jets* case").[24] On May 30, 2013, Judge Milazzo issued an Order granting summary judgment for the defendants in *Action Ink, Inc. v. New York Jets, LLC at al*[25] ("the *Jets*

---

[20]   R. Docs. 128-6 at 16; 112-5 at 105.

[21]   R. Doc. 128-6 at 17.

[22]   R. Doc. 10.

[23]   R. Doc. 125.

[24]   Civ. No. 2:12-cv-00046, R. Doc. 1.

[25]   Civ. No. 2:12-cv-00046, R. Doc. 128.

Order"). Judge Milazzo held that Action Ink had abandoned the Mark. She thus dismissed plaintiff's claims against the New York Jets and Arkadium, Inc. for federal trademark infringement, false designation of origin, and common law trademark infringement and unfair competition, since each of the claims required plaintiff to possess a valid trademark.[26]

After the *Jets* Order was issued, the parties to this case submitted briefing to the Court discussing its effect on Anheuser-Busch's pending motion for summary judgment. The Court has reviewed these submissions, along with the other documents in the summary judgment record, and rules as follows.

## II.   STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All

---

[26]     *Id.* at 27-28.

6

reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The

7

nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 332)).

## III. DISCUSSION

### A. Trademark Infringement Claim

The Lanham Act provides a cause of action for trademark infringement against a person who "uses (1) any reproduction, counterfeit, copy[,] or colorable imitation of a mark; (2) without the registrant's consent; (3) in commerce; (4) in connection with the sale, offering for sale, distribution[,] or advertising of any goods; (5) where such use is likely to cause confusion, or to cause mistake or to deceive." *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008) (alterations in original).

Defendant contends that plaintiff has failed to establish the elements of a trademark infringement claim under the Lanham Act. To maintain its claim, plaintiff must demonstrate that the mark at issue is protectable, that plaintiff is the senior user of the mark, and that there is a likelihood of confusion between

8

its mark and defendant's mark. *Union Nat'l Bank of Tex., Laredo, Tex., v. Union Nat'l Bank of Tex., Austin, Tex.*, 909 F.2d 839, 844 (5th Cir. 1990). Defendant argues that (1) plaintiff did not engage in the requisite use of the Mark; (2) even if it did use the Mark at one point, plaintiff has since abandoned it; (3) the Mark is descriptive and thus does not merit protection; and (4) plaintiff has failed to put forth evidence of a likelihood of confusion. Defendant further argues that the *Jets* Order collaterally estops plaintiff from arguing that the Mark has not been abandoned.[27]

The Court holds that summary judgment for defendant on plaintiff's trademark infringement claim is appropriate for two independent reasons: (1) plaintiff has abandoned the Mark; and (2) plaintiff has failed to show a likelihood of confusion between its purported mark and defendant's mark.

### 1. *Abandonment of the Mark*

It is uncontroverted that plaintiff obtained a federal registration for THE ULTIMATE FAN in 1985 and renewed it in 2005. Under 15 U.S.C. § 1115(a), registration of a mark is "prima facie evidence of the validity of the registered mark . . ., of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in

---

[27]     *See* R. Doc. 139.

connection with the goods or services specified in the
registration . . . ."

Yet, "[o]wnership of trademarks is established by use, not
by registration." *Union Nat'l Bank of Tex., Laredo, Tex.*, 909
F.2d at 842; *see also* 15 U.S.C. § 1127 (defining a trademark as a
"word, name, symbol, or device . . . *used* by a person, or which a
person has a bona fide intention to *use in commerce*," and in turn
defining "use in commerce" as "the bona fide use of a mark in the
ordinary course of trade, and not made merely to reserve a right
in a mark" (emphasis added)). And under the Lanham Act, even if a
registrant has owned the mark at one time -- indeed, even if the
trademark registration has become inconstestable -- an opposing
party may successfully defend against an infringement claim by
showing that the registrant has abandoned the mark. *See* 15 U.S.C.
§ 1115(b)(2). A mark is deemed abandoned if "its use has been
discontinued with an intent not to resume such use." 15 U.S.C. §
1127.

In the *Jets* Order, Judge Milazzo ruled that Action Ink has
abandoned the Mark because it has failed to use the Mark since
1995 and has shown no intent to resume such use. That ruling is
binding on this Court via the doctrine of collateral estoppel.

Collateral estoppel, also known as issue preclusion, bars
"'successive litigation of an issue of fact or law actually
litigated and resolved in a valid court determination essential

to the prior judgment,' even if the issues recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001)). The purposes of collateral estoppel are to protect parties from multiple lawsuits, to avoid the possibility of inconsistent decisions, and to conserve judicial resources. *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 553 (1990). To establish collateral estoppel, a party must show "(1) that the issue at stake [is] identical to the one involved in the prior litigation; (2) that the issue has been actually litigated in the prior litigation; and (3) that the determination of the issue in the prior litigation has been a critical and necessary part of the judgment in that earlier action." *Rabo Agrifinance, Inc. v. Terra XXI, Ltd.*, 583 F.3d 348, 353 (5th Cir. 2009). Litigants who were not parties to the earlier proceeding may nonetheless assert collateral estoppel based on that proceeding, as long as the party against whom collateral estoppel applies had a full and fair opportunity to litigate the issue in the previous suit. *Id.; see also Blonder-Tongue Labs., Inc. v. Univ. Of Ill. Found.*, 402 U.S. 313, 349-50 (1971) (patentee estopped from asserting validity of patent in second suit after patent was declared invalid in earlier action involving a different defendant).

All three of the requirements stated in *Rabo Agrifinance* are met in this case. The issue of whether Action Ink has abandoned

the Mark is the same in both this case and the *Jets* case, and it was fully briefed on the defendants' motion for summary judgment in the *Jets* case.[28] Moreover, Judge Milazzo's conclusion on the abandonment issue was a necessary predicate -- indeed, it was the only predicate -- to her dismissal of Action Ink's claims.[29]

In its brief addressing the effect of the *Jets* Order on the pending motion for summary judgment in this case, Action Ink does not contend that the elements of collateral estoppel are not met. In fact, it does not mention collateral estoppel. Plaintiff argues only that Judge Milazzo's ruling on the abandonment issue was incorrect on the merits. But the correctness or lack thereof of the prior ruling is irrelevant to the application of collateral estoppel principles. "Use of the doctrine represents an informed choice that the occasional permanent encapsulation of a wrong result is a price worth paying to promote the worthy goals of ending disputes and avoiding repetitive litigation." *Johnson v. Watkins*, 101 F.3d 792, 795 (2d Cir. 1996). Indeed, one of the purposes of the doctrine is to avoid inconsistent

---

[28]    Indeed, Action Ink. spent 11 pages of its brief in opposition to the motion for summary judgment arguing that it had not abandoned the Mark. *See* Civ. No. 2:12-cv-00046, R. Doc. 104 at 7-18.

[29]    *See* Civ. No. 2:12-cv-00046, R. Doc. 128 at 4 ("[T]he Court finds that Action Ink has abandoned all rights in the Mark. Consequently, the Mark is no longer enforceable. For these reasons, summary judgment is granted and Plaintiff's claims are dismissed.").

decisions, *Lytle*, 494 U.S. at 553 -- a purpose that could not
very well be achieved if the second court were entitled to
reexamine the conclusions of the first to determine their
correctness.

Plaintiff also suggests (but does not argue explicitly) that
the *Jets* Order is not final because plaintiff plans to file a
Rule 59 Motion and/or an appeal.[30] This is incorrect. "A judgment
otherwise final . . . is not deprived of such finality by the
fact that time still permits commencement of proceedings in the
trial court to set aside the judgment . . . ." Restatement
(Second) of Judgments § 13 cmt. f (1982); *see also Cycles, Ltd.
v. Navistar Fin. Corp.*, 37 F.3d 1088, 1090 (5th Cir. 1994)
(same). Similarly, "a judgment retains its preclusive impact on
appeal." *Aguillard v. McGowen*, 207 F.3d 226, 229 (5th Cir. 2000);
*accord* Restatement (Second) of Judgements § 13 cmt. f (1982*)*.
Even if plaintiff did file a motion for reconsideration or an
appeal in the *Jets* case, plaintiff would still be collaterally
estopped from arguing in this Court that the Mark has not been
abandoned.

Accordingly, the Court holds that Action Ink has abandoned
the Mark.

---

[30]     *See* R. Doc. 140 at 8 ("Plaintiff respectfully disagrees
with the Order and Reasons and maintains it should be
reconsidered by a Rule 59 motion to be filed, or, alternatively,
reversed by appeal. Accordingly, it should not form the basis of
any determination to be made by this Court.").

13

*2. Lack of Confusion*

Moreover, even if plaintiff maintained valid ownership in the Mark, it must also establish a likelihood of confusion between its mark and defendant's mark to prevail on its claim of infringement. *Union Nat'l Bank of Tex., Laredo, Tex.*, 909 F.2d at 844. Plaintiff is unable to make this showing.

The Fifth Circuit considers the following nonexhaustive "digits of confusion" to evaluate the likelihood of confusion: type of trademark, mark similarity, product similarity, outlet and purchaser identity, advertising media identity, defendant's intent, actual confusion, and care exercised by potential purchasers. *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009)(citing *Marathon Mfg. Co. v. Enerlite Prods. Corp*, 767 F.2d 214, 217 (5th Cir. 1985)). Moreover, in a case of reverse confusion such as here, in which a larger company allegedly uses the mark of a smaller senior user so that the senior user's product is associated with the larger company, courts also assess the commercial strength of the junior user's mark. *Great Am. Rest. Co. v. Domino's Pizza LLC,* 348 F.App'x 907, 909 (5th Cir. 2009) (citing *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 230 (3d Cir. 2000)).

The likelihood of confusion is typically a question of fact, but "summary judgment is proper if the 'record compels the conclusion that the movant is entitled to judgment as a matter of

law.'" *Xtreme Lashes*, 576 F.3d at 227 (quoting *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 474 (5th Cir. 2008)). Generally, no single "digit" is dispositive of the existence of a likelihood of confusion. *Id.; Conan Props., Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 150 (5th Cir. 1985) (citing *Armco, Inc. v. Armco Burglar Alarm Co.*, 693 F.2d 1155, 1159 (5th Cir. 1983)). Here, although the phrases at issue and the concepts they promote are the same, the other factors either weigh in favor of defendant or cannot be assessed by the Court due to a lack of evidence. The Court will consider each factor in turn.

a. *The Commercial Strength of the Junior User's Mark*

The evidence adduced to date suggests that any commercial strength enjoyed by defendant by virtue of the "Ultimate Fan" mark is quite weak. Defendant has demonstrated that many other companies run "Ultimate Fan" promotions, including in connection with contests held among sports fans. This significantly lessens the likelihood that the phrase, while known to the public, is associated with defendant specifically. *Cf. Xtreme Lashes*, 576 F.3d at 228 (noting that widespread use of a term in commerce weighs against the strength of a mark employing that term, particularly if the term is common in the plaintiff's specific market). For example, "Ultimate Fan" contests were held in connection with Conference USA, a college athletic conference,

the Los Angeles Angels, the Chicago Bulls, the New England Patriots, and the Seattle Seahawks.[31] In addition to these uses of "Ultimate Fan" in the same context in which plaintiff sought to use it, defendant provides dozens of examples of promotions involving the phrase, drawn from documents produced by plaintiff,[32] as well as 157 other examples of use of the phrase.[33] Moreover, plaintiff acknowledged during his deposition that over 60 cease and desist letters were sent between 2006-2012, indicating the prevalence of the phrase.[34]

Indeed, plaintiff has put forth no evidence, such as surveys or consumer testimonials, indicating that the public associates the words "the Ultimate Fan" with defendant. Plaintiff points to a letter from the Seattle Seahawks, in which the team responded to plaintiff's letter about use of the Mark. The letter stated that the team was not aware that it had used the "Ultimate Fan" in any advertisements. It further noted that its research turned up only a Budweiser promotion using the term "Ultimate Seahawks Fan."[35] But, this identification of defendant's promotional campaign does not demonstrate that the words "Ultimate Fan" have

---

[31]   R. Docs. 112-7 at 17, 62; 112-8 at 22, 41, 62.

[32]   R. Doc. 127 at 29-34.

[33]   R. Doc. 127 at 35-60.

[34]   Def. Ex. 3, p. 181.

[35]   Pl. Supp. Ex. 5.

16

come to represent defendant. Rather, the Seahawks merely indicated that the promotion plaintiff complained of did not originate from the Seahawks, but rather from defendant. Further, the uses of the phrase that plaintiff points to in arguing that defendant infringed its mark were accompanied by the words "Bud" or "Bud Light," defendant's own strong trademarks.[36] Indeed, whether defendant is even using "the Ultimate Fan" as a trademark or service mark is doubtful, given its constant use of its own strong trademarks when it employs the phrase "Ultimate Fan."[37] Therefore, plaintiff has failed to put forth evidence that defendant enjoys strong commercial strength for the phrase at issue. This factor accordingly favors the defendant.

   *b. Defendant's Intent*

   As to defendant's intent, there is no evidence that defendant wished to take advantage of goodwill associated with plaintiff in using the phrase, which again weighs against a finding of likelihood of confusion. *Cf. Sec. Ctr., Ltd. v. First Nat'l Sec. Ctrs.*, 750 F.2d 1295, 1301-02 (5th Cir. 1985) (declining to find trademark infringement when there was no evidence that defendant's choice of name was underhanded or

---

[36]   Pl. Ex. 52; R. Docs. 128-6 at 16; 112-5 at 105.

[37]   Nonetheless, the Court will assume for purposes of the likelihood of confusion analysis that defendant uses the phrase as a service mark.

intended to allow the defendant to profit from the name recognition of its competitor). Indeed, plaintiff has not used the Mark in any recent public campaigns; this fact alone prevents the public from associating the Mark with plaintiff. Since plaintiff cannot demonstrate that it had established any name recognition for the phrase, and given the widespread use of the phrase "Ultimate Fan" by many companies, there is nothing to support a finding that defendant intended to pirate plaintiff's goodwill.[38]

### c. Type of Trademark

"'Type of trademark' refers to the strength of the senior mark." *Xtreme Lashes*, 576 F.3d at 227. In determining the level of protection that should be afforded to marks, courts assign them to "'categories of generally increasing distinctiveness': (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful." *Id.* (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992)). "The latter three categories of marks, because their intrinsic nature serves to identify a particular source of a product, are deemed inherently distinctive and are entitled to protection." *Two Pesos*, 505 U.S. at 768. Generic

---

[38]   Any argument by plaintiff that its 1988 letter to defendant demonstrates defendant's awareness of the Mark and defendant's bad faith must fail, given the ten-year delay between the first notice of alleged infringement and defendant's promotions at issue and plaintiff's lack of use of the Mark during that time.

marks, which refer to the class of which a good is a member, receive no protection, while descriptive marks, which provide an attribute of a good, merit protection only if they have a secondary meaning. *Xtreme Lashes*, 576 F.3d at 227. "[T]he categorization of a term is properly considered a matter of fact because the appropriate categorization is not self-evident." *Union Nat. Bank of Texas, Laredo, Tex.*, 909 F.2d at 846. Registration of a mark with the PTO constitutes prima facie evidence of the mark's validity, which may be rebutted by establishing that the mark is not inherently distinctive. *See Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 237 (5th Cir. 2010).

Defendant argues that plaintiff's mark is at best descriptive and that plaintiff has presented no secondary meaning for the Mark. But plaintiff responds that the Mark is incontestable, and incontestable marks "are conclusively presumed to have to be nondescriptive or to have acquired secondary meaning." *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1184-85 (5th Cir. 1980). Under 15 U.S.C. § 1065,

> [T]he right of the owner to use [a] registered mark in commerce for the goods or services on or in connection with which such registered mark has been in continuous use for five consecutive years subsequent to the date of such registration and is still in use in commerce, shall be incontestable.

Eckstein testified that in 1991, he filed a Statement of Continuous Use in which he stated that the Mark was still in use.[39]

As discussed above, the plaintiff abandoned the Mark and so has not preserved ownership in it. But assuming for the purposes of this analysis that plaintiff owns the Mark, the Court will accord the Mark nondescriptive status. Even under that assumption, the Mark is entitled to minimal protection because it is at best suggestive rather than fanciful or arbitrary.

Terms that are arbitrary or fanciful bear no relationship to their associated products or services. *See Soweco, Inc.*, 617 F.2d at 1184 (citing "Kodak" as example of arbitrary or fanciful term). Here, plaintiff's mark THE ULTIMATE FAN is associated with a contest among sports fans. As described by plaintiff, the phrase would appear on a poster depicting an individual surrounded by products, a team's logo, and the team's players, thereby indicating the type of "fan" at issue.[40] To determine whether the word "ultimate" bears a relationship to services involving a contest among fans, the Court will look to the dictionary. "[T]he dictionary definition of [a] word is an appropriate and relevant indication of the ordinary significance and meaning of words to the public." *Am. Heritage Life Ins. Co.*

---

[39]   R. Doc. 112-5 at 42-44.

[40]   R. Doc. 112-5 at 123-24.

*v. Heritage Life Ins. Co.*, 494 F.2d 3, 11 n.5 (5th Cir. 1974) (internal citation omitted). *Webster's New World College Dictionary* (4th ed. 1999) defines the word "ultimate" as "beyond which it is impossible to go" and "greatest or highest possible; maximum; utmost." *Id.* at 1551. An "ultimate fan" could be one who has the highest level of support for a team, but it could also refer to an individual who wins a contest among fans to select a "greatest" fan. A competition among fans is a logical way in which to identify an "ultimate fan." The Court therefore finds that a relationship exists between the phrase and the service it represents and that the Mark is not arbitrary or fanciful.

Instead, the Mark is suggestive: it "suggests, but does not describe, an attribute of the good; it requires the consumer to exercise his imagination to apply the trademark to the good." *Xtreme Lashes*, 576 F.3d at 227. Because the Court finds that plaintiff's mark does not fall into the two highest levels of distinctiveness, the scope of the protection it receives is lower. *Id.* Accordingly, this factor does not favor a finding of likelihood of confusion. *See Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 201 (5th Cir. 1998) ("The stronger the mark, the greater the protection it receives because the greater the likelihood that consumers will confuse the junior user's use with that of the senior user."); *Exxon Corp. v. Tex. Motor Exch. of Hous., Inc.*, 628 F.2d 500, 504 (5th Cir. 1980) (noting that

"[t]he greater the number of identical or more or less similar trade-marks already in use on different kinds of goods," the weaker the trademark and the less the likelihood of confusion).

    *d. Evidence of Actual Confusion*

    "[A]lthough a showing of actual confusion is not mandatory, it is "patently the best evidence of likelihood of confusion." *La. World Exposition, Inc. v. Logue*, 746 F.2d 1033, 1041 (5th Cir. 1984). During his deposition, Eckstein was asked whether he had evidence of actual confusion as a result of defendant's Ultimate Fan campaign with the Redskins in 2009, and he could not identify specific examples of actual confusion.[41] Further, in responding to defendant's motion for summary judgment, plaintiff did not address the issue of confusion or submit surveys from consumers evincing their confusion about the origins of "Ultimate Fan" promotions. Plaintiff's supplemental submissions concerning likelihood of confusion, tendered in response to the Court's request at oral argument on the summary judgment motion, likewise did not contain evidence of actual confusion. This factor thus militates strongly against a finding of likelihood of confusion.

    Indeed, plaintiff's inability to produce any evidence of actual confusion underscores the absence of its mark from the public eye. The Court cannot evaluate the likelihood of confusion

---

    [41]    R. Doc. 112-5 at 99-100.

based on the other factors that *Xtreme Lashes* discusses, such as the two companies' retail outlets, purchasers, or media used, because plaintiff has none to speak of for the Mark. Trademark protection aims to avoid situations in which consumers cannot identify the origin of goods or services and assume that a similar mark indicates a connection between different companies. *See Capece*, 141 F.3d at 201. Therefore, in determining whether marks are sufficiently similar to result in consumer confusion, courts focus on whether "prospective purchasers are likely to believe that the two users are somehow associated." *Id.* Plaintiff has not been involved in a promotion using the Mark in almost twenty years. Thus, there is no possibility that consumers have been unable to discern whether a contest called "The Ultimate Fan" originates from plaintiff or another company because plaintiff has no public presence related to the Mark.

Accordingly, the Court finds that plaintiff has failed to demonstrate that genuine issues of fact exist as to a likelihood of confusion between its mark and defendant's promotions, and thus it cannot maintain its claim for trademark infringement.[42]

**B.   False Designation of Origin Claim**

Defendant also seeks summary judgment on plaintiff's claim of false designation of origin. Under 15 U.S.C. § 1125(a)(1),

---

[42]    The Court need not reach defendant's argument that plaintiff's claim is barred by laches.

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services or commercial activities,

shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

Plaintiff argues that defendant misidentified its claim as one related to false advertising, when in fact it relates to § 1125(a)(1)(A). Plaintiff contends that defendant's use of THE ULTIMATE FAN produces reverse confusion -- in other words, that, by flooding the market with its similar campaign, defendant is reducing the value of plaintiff's mark.

This claim fails for the same reasons as Action Ink's trademark infringement claim. First, a plaintiff who brings suit under § 1125(a) must show that it has a valid trademark that is entitled to protection. *Riggs Mktg. Inc. v. Mitchell*, 993 F. Supp. 1301, 1305 (D. Nev. 1997). Action Ink, however, has abandoned the Mark. Second, the Fifth Circuit has held that "likelihood of confusion is the central evidentiary test" for

both infringement claims and false designation of origin claims under the Lanham Act. *Am. Century Proprietary Holdings, Inc. v. Am. Century Cas. Co.,* 295 F. App'x 630, 634 (5th Cir. 2008). As explained above, plaintiff has failed to demonstrate a likelihood of confusion, even if it is assumed that plaintiff did not abandon the Mark. Accordingly, summary judgment on plaintiff's claim of false designation of origin is appropriate.

## C. Plaintiff's State Law Claims

Defendant also seeks summary judgment on plaintiff's claims of unfair competition, unfair trade practices, and injury to business reputation/dilution. The Louisiana Unfair Trade Practice and Consumer Protection Act (LUTPA) prohibits "[u]nfair methods of competition and unfair or deceptive acts in the conduct of any trade or commerce." La. Rev. Stat. § 51:1405. "Likelihood of confusion is the essential ingredient for claims of unfair competition under both the Lanham Act and [LUTPA]." *La. World Exposition*, 746 F.2d at 1039. A showing of a likelihood of confusion presupposes the existence of a valid mark. *See id.* at 1040. Therefore, the Court's holdings that plaintiff (1) abandoned the Mark and (2) failed to show likelihood of confusion are dispositive as to plaintiff's state law claims of unfair competition.

Plaintiff also has not demonstrated that defendant's development and use of an "Ultimate Fan" promotional campaign

25

amounts to an unfair trade practice. There is no evidence suggesting that this conduct "offends established public policy and [] is immoral, unethical, oppressive, or unscrupulous," or deceptive because "it amounts to fraud, deceit, or misrepresentation." *Monroe Med. Clinic, Inc. v. Hosp. Corp. of Am.*, 622 So. 2d 760, 763 (La. Ct. App. 1993).

As for plaintiff's claims of injury to business reputation or dilution, plaintiff asserts that its claim does not fall under LUTPA but rather Louisiana's Anti-Dilution Statute, which states:

> Likelihood of injury to business reputation or of dilution of the distinctive qualify of a mark or trade name shall be grounds for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

La. Rev. Stat. § 51:223.1. The statute "protects a mark based on its strength . . . [and] such strength can be demonstrated by showing a mark to either be distinctive or to have acquired a secondary meaning." *Prudhomme v. Procter & Gamble Co.*, 800 F. Supp. 390, 395 (E.D. La. 1992).

Because defendant identified plaintiff's claim as falling under LUTPA, it did not address the statute at issue in its motion for summary judgment. Nevertheless, for the reasons discussed above, the Court finds that plaintiff has failed to put forth evidence establishing genuine issues of material fact as to injury to its reputation or dilution of a distinctive mark.

26

First, plaintiff has abandoned the Mark, and a valid trademark is a logical predicate to an anti-dilution claim. Second, plaintiff has not submitted evidence that its reputation has been damaged, that the public ever associated it with the phrase THE ULTIMATE FAN, or that the association has been diluted. Any injury to the plaintiff is mere conjuncture and insufficient to raise issues of material fact.

### D. Defendant's Counterclaim

Finally, defendant seeks summary judgment on its counterclaim, in which it argues that plaintiff's mark should be cancelled. Under 15 U.S.C. § 1064, a mark may be cancelled at any time if it has been abandoned. Judge Milazzo has already ordered the cancellation of the Mark based on her finding of abandonment.[43] Accordingly, defendant's motion for summary judgment on its counterclaim will be granted.

### E.   Attorneys' Fees

Under the Lanham Act, reasonable attorneys' fees may be awarded to the prevailing party in "exceptional cases." 15 U.S.C. § 1117(a). "To recover attorneys' fees, the prevailing party must demonstrate the exceptional nature of the case by clear and convincing evidence." *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 490 (5th Cir. 2004) (internal quotation marks

---

[43]   Civ. No. 2:12-cv-00046, R. Doc. 133.

27

omitted). To show that a case is exceptional, the defendant must prove that the plaintiff brought it in bad faith. *Id*.

Defendant has not carried its burden. Although plaintiff abandoned the Mark by failing to use it or demonstrate an intent to resume use, its claims "are not so implausible as to necessitate an inference of bad faith." *Id*. at 491. Defendants' request for attorneys' fees is denied.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's motion for summary judgment on plaintiff's claims and GRANTS defendant's counterclaim. The Court DENIES defendant's request for attorneys' fees.


New Orleans, Louisiana, this <u>17th</u> day of July 2013.


_____

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE